MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
Telephone:    (212) 317-1200
Facsimile:    (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X



RUPERTO RUIZ, *individually and on behalf*
*of others similarly situated,*

                                    Plaintiff,

          -against-

EL PASO TAQUERIA, CORP., RODRIGO
ABRAJÁN, PORFIRIO GRANDE, and
DAVID GARNELO,

                                    *Defendants.*
-------------------------------------------------------X

09 CV 10575 (RJS)

**FIRST AMENDED**
**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Ruperto Ruiz, individually and on behalf of others similarly situated

(collectively the "Plaintiffs"), by and through his attorneys, Michael Faillace & Associates, P.C.,

upon his knowledge and belief, and as against Defendants El Paso Taqueria Corp. (hereinafter

"Defendant Corporation"), and Rodrigo Abraján, Porfirio Grande, and David Garnelo

(collectively the "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a former employee of Defendants El Paso Taqueria Corp., and Rodrigo Abraján, Porfirio Grande, and David Garnelo.

2.      Defendants own, operate, or control a chain of Mexican restaurants at various locations throughout Manhattan, New York. These restaurants are located at 64 East 97th Street, 237 East 116th Street, and 1642 Lexington Avenue. The 1642 Lexington Ave. location has subsequently been moved to 1643 Lexington Avenue.

3.      All these restaurants operate under the common name of El Paso Taqueria, and use identically themed menus, trade names, advertising, and employment practices.

4.      Upon information and belief, Individual Defendants Rodrigo Abraján , Porfirio Grande, and David Garnelo, serve or served as owners, managers, principals or agents of Defendant El Paso Taqueria Corp., and individually or through the corporate entity, owned and/or operated the three restaurants as a joint or unified enterprise.

5.      Plaintiff was initially employed to work as a kind of "go-for," transport food and supplies to and between the restaurants. However, he was also required to perform many other tasks, such as working at the cash register, stocking various supplies, working as a waiter and/or assisting the waitresses/waiters, preparing delivery orders, and making drinks for the food deliveries. Other employees were similarly required to routinely perform duties beyond what they were originally hired to do, or what titles Defendants gave them.

6.      At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiff, and other similarly situated individuals, to work in excess of forty (40) hours per week without paying them the minimum wage and overtime compensation required by federal and state laws.

7.      Further, Defendants, through these same policies and practices, willfully sought to hide their minimum wage violations by *inter alia* paying the majority of their employees entirely in cash (in envelopes), not providing to their employees required statements of hours worked or pay received, not posting required wage and hour information, and generally employing persons who were not aware of their rights under applicable minimum wage and overtime laws.

8.      Plaintiff now brings this action on behalf of himself, and other similarly situated individuals, to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and *inter alia* for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

9.      Plaintiff seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b). He similarly grants his "consent to sue" as a representative member of any prospective collective action under 29 U.S.C. §216(b).

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to claims asserted under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. § 1367(a).

11.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of New

- 3 -

York within this district. The Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a chain of Mexican restaurants located in this district. Further, Plaintiff was employed by Defendants in this district.

## THE PARTIES

### *Plaintiff Ruperto Ruiz*

12.    Plaintiff Ruperto Ruiz ("Plaintiff Ruiz" or "Mr. Ruiz") is an adult individual residing in New York County, New York.

13.    Plaintiff Ruiz at all times relevant to this complaint was employed by the Defendants, performing a variety of different jobs at all three restaurant locations.

14.    Plaintiff Ruiz consents to being a party plaintiff pursuant to 29 U.S.C. 216(b), and brings these claims, based upon the allegations herein, as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. 216(b).

### *Defendants*

15.    Defendants own, operate, or control a chain of Mexican restaurants located in Manhattan, New York under the name of El Paso Taqueria, at all times relevant to this complaint.

16.    Defendant El Paso Taquería Corp. is a corporation organized and existing under the laws of the State of New York. Upon information and belief, El Paso Taqueria Corp. lists its location for service of process as 237 East 116th Street, New York, New York 10029.

17.    Defendant Rodrigo Abraján is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Rodrigo Abraján is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Rodrigo Abraján possesses or possessed operational control over Defendant

Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

18.     Defendant Porfirio Grande is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Porfirio Grande is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Porfirio Grande possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

19.     Defendant David Garnelo is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant David Garnelo is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant David Garnelo possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

20.     Defendants operate three Mexican restaurants in the East Harlem section of Manhattan, New York.

21.     Defendants operate these restaurants under the name El Paso Taqueria at the following locations: 237 East 116th Street, New York, New York 10029; 64 East 97th Street, New York, New York 10029; and 1642 Lexington Avenue, New York, New York 10029.  Defendants subsequently moved the 1642 Lexington Avenue location to 1643 Lexington Avenue, New York, New York.

22.     These restaurants shared common ownership and joint and/or unified operations, and are referred to hereinafter collectively as the "Restaurants."

23.     Defendants maintain as their principal place of business a centralized office, which is located at 237 E. 116th Street, New York, NY, which in turn is used to manage and operate the Restaurants.

24.     The Individual Defendants, Rodrigo Abraján, Porfirio Grande, and David Garnelo, possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation, including operational control, ownership interest, and control over significant functions of the Restaurants.

25.     Defendants maintain a single website, www.elpasotaqueria.com, devoted to advertising for all of the Restaurants.

26.     Defendants transfer goods and items amongst the Restaurants, including raw materials such as food items and materials, as well as end product items produced at one of the restaurants, such as desserts, for sale in the other Restaurants.

- 6 -

27.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

28.    Each Defendant possessed substantial control over Plaintiff's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

29.    Therefore, for the above and other reasons, Defendants jointly employed Plaintiff, and all similarly situated individuals, and are Plaintiff's (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

30.    In the alternative, the Defendants constitute a single employer of Plaintiff and/or similarly situated individuals.

31.    Upon information and belief, Individual Defendants Rodrigo Abraján, Porfirio Grande, and David Garnelo operate the Defendant Corporation as either an alter ego of themselves, and/or fail to operate the Defendant Corporation as an entity legally separate and apart from their own selves, by, amongst other things,

      a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as separate and legally distinct entity,

      b.  defectively forming or maintaining Defendant Corporation, by amongst other things failing to hold annual meetings or maintaining appropriate corporate records,

      c.  transferring assets and debts freely as between all Defendants,

d. operating Defendant Corporation for their own benefit as the sole or majority shareholder(s),

e. operating Defendant Corporation for their own benefit and maintaining control over them as a closed corporation or closely controlled entity,

f. intermingling assets and debts of their own with Defendant Corporation,

g. diminishing and/or transferring assets in favor of bankruptcy of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h. other actions evincing a failure to adhere to the corporate form, or maintain a legally distinct entity, thereby allowing for a breach of the corporate veil.

32. At all relevant times, Defendants were the Plaintiff's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff, control his terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

33. In each year from 2003 to the present, the Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000.

34. In addition, upon information and belief, the Defendants and/or their enterprise were directly engaged in interstate commerce. As example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the state of New York.

## Defendants' Employment Practices

35. At all times relevant to this complaint, Plaintiff was an employee of Defendants.

36. Plaintiff Ruiz was employed by the Defendants from on or about January 8, 2002 until June 24, 2009.

- 8 -

37.     Throughout his employment, Plaintiff Ruiz was required to go to all of the Restaurant locations to deliver food supplies.

38.     However, Plaintiff Ruiz was required to report to the restaurant located at 1642 Lexington Avenue, New York, New York 10029 at the beginning of his work day. When the new location at 1643 Lexington Avenue, New York, New York opened on or about June 18, 2009, Mr. Ruiz was then required to report to that location until the end of his employment.

39.     Plaintiff Ruiz's duties included (and have included for all times relevant to this action)a wide variety of different tasks including *inter alia*, purchasing food items requested by the cooks for the restaurants' menu items, and then driving a truck to transport the food items to all of the restaurants.

40.     Plaintiff Ruiz was required to purchase and deliver food supplies to all of the restaurants at the beginning of his work day; and once he finished this task, he returned to the 1642 Lexington Avenue location (and then to the 1643 Lexington Avenue location when the Defendants moved the restaurant), where he then worked at the cash register and assisted customers.

41.     He also was required to work at times as a cashier. In his performance of his cashier duties, he was required to count the money that was received in sales, and to make sure that the money in the register balanced what was tallied in the sales receipts.

42.     He was also called upon to assist the waitresses/waiters in performing their jobs. He would take food to customers, clear tables, and perform other duties normally performed by the waiters/waitresses as needed.

43.     He would assist the delivery persons by helping them pack and prepare orders, filling drink orders, mixing beverages for the deliveries, and generally assisting them as needed.

44.    He was also required by Defendants to run various errands for the Restaurants, which often required him to deliver food items from one restaurant to another.

45.    In short, Mr. Ruiz had to perform a great deal of different tasks within the three Restaurants, and also operated as a general "go for" and driver.

46.    Plaintiff Ruiz's work duties required neither discretion nor independent judgment.

47.    In the performance of his work duties, Plaintiff Ruiz handled goods in interstate commerce every day, including but not limited to the numerous food items that he purchased and delivered to the restaurants that travelled in interstate commerce.

48.    From on or about January 8, 2002 until June 24, 2009, Plaintiff Ruiz regularly worked in excess of 40 hours per week.

49.    From on or about January 8, 2002 until approximately September 2007, Plaintiff Ruiz worked approximately from 8 a.m. to 1:00 a.m., Mondays, Tuesdays, Fridays, and Saturdays; from 11:00 a.m. to 1:00 a.m. on Wednesdays; and from 11:00 a.m. until 12:00 a.m. on Sundays.

50.    From approximately September 2007 until on or about June 24, 2009, Mr. Ruiz worked from 8:00 a.m. until 2:00 and from 4:00 p.m. until 1:00 a.m. Mondays, Tuesdays, Fridays, and Saturdays; from 11:00 a.m. until 1:00 a.m. Wednesdays; and from 11:00 a.m. until 12:00 a.m. Sundays.

51.    These were his scheduled hours, however, his actual hours worked were sometimes more than his scheduled hours, and as noted below, on several occasions he was late for his scheduled hours, and Defendants docked Plaintiff's pay.

52.    During his employment with the Defendants, Plaintiff Ruiz was paid in cash.

53.     From on or about January 8, 2002 until approximately September 2004, Plaintiff Ruiz was paid at the rate of $7.00 per hour for the first 10 hours of work in a day, and $6.00 per hour for the additional hours worked in a day.

54.     From approximately September 2004 until May 2005, Mr. Ruiz was paid at the rate of $8.00 per hour for the first 10 hours in a day, and $7.00 per hour for the additional hours worked in a day.

55.     From approximately May 2005 until September 2007, Mr. Ruiz was paid at the rate of $10.00 per hour for the first 10 hours worked in a day, and $9.00 per hour for any additional hours worked in a day.

56.     From approximately September 2007 until on or about July 24, 2009, Mr. Ruiz was paid at the rate of $11.50 per hour for the first 10 hours worked in a day, and $9.00 per hour for any additional hours worked in a day.

57.     Plaintiff Ruiz was paid entirely in cash, and never once received any document or statement that detailed his rate of compensation or his actual number of hours worked.

58.     Each week, usually on Sunday after midnight, Mr. Ruiz was handed an envelope with his first name written on it that contained his pay for the prior week's work in cash.

59.     Defendant Porfirio Grande typically handed him the envelope.

60.     Plaintiff Ruiz's experience was representative of all those who were similarly situated, who worked for the Defendants, who were paid in cash, and never received any sort of document that stated rate of pay or actual number of hours worked.

61.     Upon information and belief, this was done to disguise the actual number of hours Plaintiff (and other similarly situated employees) worked, and to avoid paying him (and other

similarly situated employees) properly for (1) full hours worked, (2) overtime due, and (3) for spread of hours pay.

62.     Defendants regularly required Plaintiff Ruiz and all similarly situated individuals to work in excess of forty (40) hours per week without paying the proper overtime wages or spread of hour compensation.

63.     In addition, because Plaintiff Ruiz was required by Defendants to work at all three Restaurants, in a wide variety of different jobs, he personally would daily witness the manner in which other employees were paid, how long they worked, and also, on occasion, he spoke with other employees regarding their compensation.

64.     He therefore witnessed the uniform practices of Defendants in failing to compensate their other employees with appropriate minimum wage and overtime pay.

65.     For example, the delivery personnel were typically required to work 6 days a week for 11-12 hours a day. These delivery workers received a flat weekly pay, regardless of actual hours worked. Many of them received a flat amount of $350 a week, and others worked for far less than $350 a week. At some locations, delivery persons were paid $230-250 a week for well over 40 hours of work.

66.     The delivery workers were uniformly paid all in cash, in an envelope once a week, without any statement of hours worked, or any breakdown of the pay received (detailing their hours work at a regular rate and additional overtime hours worked).

67.     Mr. Ruiz worked along-side these workers in preparing the outgoing deliveries, and in performing their "non-delivery" tasks.

68.     Further, although Defendants called the delivery employees "delivery persons," these employees were required to perform stocking duties, food preparation duties, cleaning

duties, and a variety of other functions other than delivery work. Indeed, when Mr. Ruiz was ordered by Defendants to deliver a large food order from one restaurant to another, the "Delivery" persons would unload and load the supplies with him. Mr. Ruiz was also required to work along-side the delivery persons when they prepared food, packed food and supplies, and prepared delivery orders for delivery.

69.     The waitresses/waiters were also paid well below minimum wage, and were not paid any overtime premium pay for hours worked beyond 40 per week.

70.     The waitresses/waiters were paid at the rate of $10 a day, despite working long days (often 12 hours or more a day), 5-6 days a week, and well over 40 hours each week.

71.     The waitresses/waiters were also paid each week entirely in cash. The waitresses did not receive any statement of hours worked or any breakdown of pay received (detailing their hours work at a regular rate and additional overtime hours worked).

72.     Mr. Ruiz worked directly with these waitress/waiters and was required by Defendants to perform the same tasks they did.

73.     Mr. Ruiz also observed that the cooks and other kitchen workers were similarly paid all in cash, and at the same flat weekly pay rate. Defendants, as a result of these practices, paid these workers below the minimum wage, and failed to pay required overtime premium pay for any hours worked more than 40 in a week.

74.     As example, a cook at 1643 Lexington would receive the same flat rate of $500 a week in 2009, while that same cook was required to work 12 hours a day for 6 days a week.

75.     Other kitchen workers were paid even less for similar hours worked.

76.     The cooks and kitchen workers also did not receive any statement of hours worked or any breakdown of pay received.

77.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by neglecting to maintain accurate and complete timesheets and payroll records.

78.     Indeed, Defendants did not maintain any time-keeping sheets, punch cards, clocks, employee sign in sheets, or any other method of accurately tracking employee time worked.

79.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

80.     Further, many of the employees of Defendants are not sophisticated with respect to their rights, have little or no knowledge of the labor laws, and do not speak English. Upon information and belief, Defendants hired these persons in part so as to assist in their violation of the labor laws (detailed herein), as these persons were unlikely to know their rights, and unlikely to complain.

81.     On at least six occasions, Mr. Ruiz had his pay deducted by Defendant Porfirio Grande. He had been late by a few minutes on these occasions, and Defendant Porfirio deducted an entire hour from his pay. This deduction was not stated or detailed anywhere in writing to Plaintiff.

82.     In addition, Mr. Ruiz also would occasionally work a few minutes past his normally scheduled time, without any additional compensation. Indeed, Defendants essentially paid him, and most of their other employees, the same amount each week in cash with little or no variation. Defendants suffered and permitted such work by Plaintiff, and received the benefit of Plaintiff's work when he was required to work beyond his scheduled hours. Since Defendants

did not track his time, Mr. Ruiz received no statement indicating any additional time worked, or indicating that additional compensation was due.

## FLSA COLLECTIVE ACTION CLAIMS

83.     Plaintiff brings his FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (all employees of Defendants or Restaurants, paid on an hourly basis or improperly classified as salaried or exempt employees, including but not limited to those designated as delivery persons, cooks, food preparers, stock persons, waitresses/waiters, buss-boys/girls, and drivers) who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

84.     At all relevant times, Plaintiff, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements, duties and/or pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, willfully failing to pay them at minimum wage, and willfully failing to keep records of *inter alia* hours worked and pay breakdown, as required by the FLSA.  The claims of Plaintiff stated herein are similar to those of the other employees.

85.     In addition, Plaintiff alleges that given the failure of Defendants to follow their required recordkeeping requirements, and failure to supply the required notices of the NYLL and FLSA to their employees, equitable estoppel should be granted to any prospective collective

- 15 -

action member whose claims might have otherwise expired under applicable statutes of limitation as a matter of fundamental fairness.

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

86.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

87.     At all times relevant to this action, Defendants were Plaintiff's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff (and the putative FLSA Class members), control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

88.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

89.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

90.     Defendants intentionally, or otherwise, failed to pay Plaintiff (and the putative FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

91.     Defendants' failure to pay Plaintiff (and the putative FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

92.     Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

93.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

94.     Defendants intentionally, or otherwise in violation of the FLSA, failed to pay Plaintiff (and the putative FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

95.     Defendants' failure to pay Plaintiff and the putative FLSA Class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

96.     Plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

97.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

98.     At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff, control his terms and conditions of employment, and determine the rates and methods of any compensation in exchange for his employment.

99.     Defendants knowingly, or otherwise in violation of the NYLL, paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

- 17 -

100.    Defendants' failure to pay Plaintiff minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

101.    Plaintiff has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK STATE LABOR LAW)

102.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

103.    Defendants willfully, or otherwise in violation of the NYLL and associated rules and regulations, failed to pay Plaintiff overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor.

104.    Defendants failed to pay Plaintiff in a timely fashion, as required by Article 6 of the New York Labor Law.

105.    Defendants' failure to pay Plaintiff overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

106.    Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

107.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

108.   Defendants failed to pay Plaintiff one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

109.   Defendants' failure to pay Plaintiff an additional hour's pay for each day Plaintiff's spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

110.   Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants:

(a)   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)   Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff (including the prospective collective class members);

(c)   Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff (including the prospective collective class members);

(d)   Declaring that the Defendants have violated the recordkeeping requirements of,

and associated rules and regulations under, the FLSA with respect to Plaintiff's (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiff (including the prospective collective class members);

(f)     Awarding Plaintiff (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiff (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff;

(k)     Declaring that the Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiff's compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiff;

(m)   Awarding Plaintiff damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)   Awarding Plaintiff liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)   Awarding Plaintiff (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(p)   Awarding Plaintiff (including the prospective collective class members) the expenses incurred in this action, including costs and attorney's fees; and

(q)   All such other and further relief as the Court deems just and proper.

Dated: New York, New York
         March 19, 2010

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:  _____
         Michael Faillace [MF-8436]

110 East 59th Street, 32nd Floor
New York, New York 10022
Telephone:  (212) 317-1200
Facsimile:  (212) 317-1620
*Attorneys for Plaintiff*